# No. 14-16806

**Consolidated with Nos. 14-15113 and 14-16928**
**D.C. No. 4:13-CV-04517-CW**

# UNITED STATES COURT OF APPEALS

## FOR THE NINTH CIRCUIT

———————

HABEAS CORPUS RESOURCE CENTER; OFFICE OF
THE FEDERAL PUBLIC DEFENDER FOR THE
DISTRICT OF ARIZONA,

*Plaintiffs-Appellees*,

*vs.*

UNITED STATES DEPARTMENT OF JUSTICE;
LORETTA E. LYNCH,

*Defendants*,

MARC KLAAS,

*Movant-Appellant*.

**On appeal from the United States District Court for the Northern District
of California, The Honorable Claudia Wilken, Judge**

═══════════════════════════════════

### BRIEF FOR APPELLANT

═══════════════════════════════════

KENT S. SCHEIDEGGER
Criminal Justice Legal Foundation
2131 L Street
Sacramento, California 95816
Telephone: (916) 446-0345
Fax:　　　 (916) 446-1194
E-mail:　　 briefs@cjlf.org

*Attorney for Appellant*

# TABLE OF CONTENTS

Table of authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iv

Statement of jurisdiction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Statement of the issues . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Statement of the case . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Incorporation of Government's arguments . . . . . . . . . . . . . . . . . . . . . 7

Summary of argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

## I

The District Court has no jurisdiction to hear a challenge to the substance
   of the rule . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

## II

As an interpretive regulation that does not regulate conduct or speech, the
   substantive portions of the rule are not subject to a vagueness
   challenge. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

   A. Prohibitions versus self-guidance . . . . . . . . . . . . . . . . . . . . . . . 17

   B. Legislative v. interpretative regulations . . . . . . . . . . . . . . . . . . 19

## III

The Attorney General may (and should) give content to the Chapter 154
   standards primarily by adjudicating particular applications rather than
   specifying details in advance in regulations . . . . . . . . . . . . . . . . . . . 23

   A. Certification decisions as adjudications . . . . . . . . . . . . . . . . . . . 23

   B. Filling the gaps by regulation and adjudication . . . . . . . . . . . . . 26

   C. Continued validity of pre-2006 Chapter 154 precedents. . . . . . . 30

**IV**

The case is not "ripe" . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32


**V**

Plaintiffs lack standing because their alleged injury does not fall within
the "zone of interests" protected by the statute. . . . . . . . . . . . . . . . . 34


**VI**

Under FRCP 19, an injunction effectively halting pending applications of
Arizona and Texas cannot be granted in an action to which those States
are not parties . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36


**VII**

The District Court completely failed to consider the powerful public
interest in the implementation of Chapter 154 . . . . . . . . . . . . . . . . . 39


Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40

Statement of related cases

Certificate of compliance

Addendum

Certificate of service

# TABLE OF AUTHORITIES

## Cases

Abbott Laboratories v. Gardner, 387 U.S. 136, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 11

American Greyhound Racing, Inc. v. Hull, 305 F.3d 1015 (9th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36, 38

Ashmus v. Woodford, 202 F.3d 1160 (9th Cir. 2001) . . . . . . . . . . . . . . 31

Block v. Community Nutrition Institute, 467 U.S. 340, 104 S.Ct. 2450, 81 L.Ed.2d 270 (1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Calderon v. Ashmus, 523 U.S. 740, 118 S.Ct. 1694, 140 L.Ed.2d 970 (1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 29, 35

Chrysler Corp. v. Brown, 441 U.S. 281, 99 S.Ct. 1705, 60 L.Ed.2d 208 (1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

City of Mesquite v. Aladdin's Castle, Inc., 455 U.S. 283, 102 S.Ct. 1070, 71 L.Ed.2d 152 (1982) . . . . . . . . . . . . . . . . . . . . . . . . 17

Colwell v. Department of Health and Human Services, 558 F.3d 1112 (9th Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Cook v. Food & Drug Administration, 733 F.3d 1 (D.C. Cir. 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38

Duncan v. Walker, 533 U.S. 167, 121 S.Ct. 2120, 150 L.Ed.2d 251 (2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

eBay, Inc. v. MercExchange, L.L.C., 547 U.S. 388, 126 S.Ct. 1837, 164 L.Ed.2d 641 (2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39

Elgin v. Dept. of the Treasury,132 S.Ct. 2126, 183 L.Ed.2d 1 (2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 15

Erringer v. Thompson, 371 F.3d 625 (9th Cir. 2004) . . . . . . . . . . . . . . 22

Gonzales v. Oregon, 546 U.S. 243, 126 S.Ct. 904, 163 L.Ed.2d 748 (2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Gunderson v. Hood, 268 F.3d 1149 (9th Cir. 2001) . . . . . . . . . . 19, 20, 21

Holland v. Florida, 560 U.S. 631, 130 S. Ct. 2549, 177 L. Ed. 2d 130 (2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

Immigrant Assistance Project of the Los Angeles County Federation of
   Labor v. INS, 306 F.3d 842 (9th Cir. 2002) . . . . . . . . . . . . . . . . . . . . 35

INS v. Legalization Assistance Project of Los Angeles Federation of
   Labor, 510 U.S. 1301, 114 S.Ct. 422, 126 L.Ed.2d 410 (1993) . . 34, 35

Lujan v. National Wildlife Federation, 497 U.S. 871, 110 S.Ct. 3177,
   111 L.Ed.2d 695 (1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

Mata v. Johnson, 99 F.3d 1261 (5th Cir. 1996) . . . . . . . . . . . . . . . . . . . 37

McNary v. Haitian Refugee Center, Inc., 498 U.S. 479, 111 S.Ct. 888,
   112 L.Ed.2d 1005 (1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

McQuiggin v. Perkins, 133 S.Ct. 1924, 185 L.Ed.2d 1019
   (2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

Minority Television Project, Inc. v. FCC, 736 F.3d 1192
   (9th Cir. 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Mora-Meraz v. Thomas, 601 F.3d 933 (9th Cir. 2010) . . . . . . . . . . . . . 21

National Park Hospitality Assn. v. Department of Interior, 538 U.S. 803,
   123 S.Ct. 2026, 155 L.Ed.2d 1017 (2003) . . . . . . . . . . . . . . . 20, 21, 33

Natural Resources Defense Council v. Abraham, 388 F.3d 701
   (9th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

NLRB v. Bell Aerospace Co., 416 U.S. 267, 94 S. Ct. 1757,
   40 L. Ed. 2d 134 (1974) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

Nyeholt v. Secretary of Veterans Affairs, 298 F.3d 1350
   (Fed. Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Pearson v. Shalala, 164 F.3d 650 (D.C. Cir. 1999) . . . . . . . . . . . . . . . . 17

Perez v. Mortgage Bankers Assn., 135 S.Ct.1199,
   191 L.Ed.2d 186 (2015) . . . . . . . . . . . . . . . . . . . . . . . . . 19, 20, 22, 28

Perry v. Schwarzenegger, 630 F.3d 898 (9th Cir. 2011) . . . . . . . . . . . 2, 6

Pfaff v. HUD, 88 F.3d 739 (9th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . 27

RLC Industries Co. v. Commissioner, 58 F.3d 413
   (9th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

Schriro v. Landrigan, 550 U.S. 465, 127 S. Ct. 1933,
   167 L. Ed. 2d 836 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Shalala v. Illinois Council on Long Term Care, Inc., 529 U.S. 1,
    120 S.Ct. 1084, 146 L.Ed.2d 1 (2000) . . . . . . . . . . . . . . . . . . . . . . . . 14

South Terminal Corp. v. EPA, 504 F.2d 646 (1st Cir. 1974) . . . . . . . . . 18

Spears v. Stewart, 283 F.3d 992 (9th Cir. 2001) . . . . . . . . . . . . . . . . . . 31

Steel Co. v. Citizens for a Better Environment, 523 U.S. 83,
    118 S.Ct. 1003, 140 L.Ed.2d 210 (1998) . . . . . . . . . . . . . . . . . . . . . . . 2

Thunder Basin Coal Co. v. Martin, 969 F.2d 970
    (10th Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Thunder Basin Coal Co. v. Reich, 510 U.S. 200, 114 S.Ct. 771, 127
    L.Ed.2d 29 (1994) . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 11, 12, 13, 14, 17

United States v. Dunifer, 219 F.3d 1004 (9th Cir. 2000) . . . . . . . . . . . 10

Woodford v. Garceau, 538 U.S. 202, 123 S.Ct. 1398,
    155 L.Ed.2d 363 (2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38

Woodruff v. Dept. of Labor, 954 F.2d 634 (11th Cir. 1992) . . . . . . . . . . 18

Yesler Terrace Cmty. Council v. Cisneros, 37 F.3d 442
    (9th Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

**Federal Statutes**

142 Cong. Rec. 7562 (1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

5 U.S.C. § 551 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

5 U.S.C. § 553 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

18 U.S.C § 3771 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39

18 U.S.C. § 3599 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

28 U.S.C. § 1331 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

28 U.S.C. § 2261 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

28 U.S.C. § 2265 . . . . . . . . . . . . . . . . . . . . 4, 16, 20, 21, 23, 28, 29, 30, 33

28 U.S.C. §1291 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Former § 2261(b), Pub. L. 104-132 § 107,
    110 Stat. 1221-1222 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

## Federal Regulations

28 C.F.R. § 26.22 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

28 C.F.R. § 26.23 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Certification Process for State Capital Counsel System, 78 Fed. Reg.
58160 (Sept. 23, 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

## Federal Rules

Fed. R. App. P. 4(a)(1)(B) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Fed. R. App. P. 43(c)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

## Other Authorities

Cal. Dept. of Corrections and Rehabilitation, Condemned Inmate
Summary List (April 6, 2015), http://www.cdcr.ca.gov/
Capital_Punishment/docs/CondemnedInmateSummary.pdf . . . . 25, 26

1 Charles H. Koch, Administrative Law and Practice
(3d ed. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20, 24, 27

Judicial Conference of the United States, Ad Hoc Committee on Federal
Habeas Corpus in Capital Cases, Committee Report, *reprinted in* 135
Cong. Rec. 24694, 24696, col. 2 (1989) . . . . . . . . . . . . . . . . . . . . . . . 29

Richard J. Pierce, Administrative Law Treatise
(5th ed. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 20, 22, 26-28

Streamlined Procedures Act of 2005, Hearing before the Subcommittee on
Crime, Terrorism, and Homeland Security of the Committee on
Judiciary, House of Representatives, 109th Cong., 1st Sess., Serial No.
109-82 (2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 16

U.S. Dep't of Justice, Off. of Legal Counsel, The Attorney General's
Authority in Certifying Whether a State Has Satisfied the Requirements
for Appointment of Competent Counsel for Purposes of Capital
Conviction Review Proceedings (Dec. 16, 2009) . . . . . . . . . . . . . . . 21

# UNITED STATES COURT OF APPEALS

## FOR THE NINTH CIRCUIT

───────────

HABEAS CORPUS RESOURCE CENTER; OFFICE OF
   THE FEDERAL PUBLIC DEFENDER FOR THE
   DISTRICT OF ARIZONA,

*Plaintiffs-Appellees*,

*vs.*

UNITED STATES DEPARTMENT OF JUSTICE;
   LORETTA E. LYNCH,

*Defendants*,

MARC KLAAS,

*Movant-Appellant.*

## BRIEF FOR APPELLANT

## STATEMENT OF JURISDICTION

Whether the District Court had jurisdiction is one of the issues in this case. The District Court issued its judgment on August 7, 2014. Appellant filed a protective notice of appeal on September 19, 2014. An agency and an officer of the United States are defendants in this action, so that a notice of appeal filed within 60 days is timely. *See* Fed. R. App. P. 4(a)(1)(B).

Where a movant has filed both an appeal from the denial of the motion to intervene and a protective appeal on the merits, this court has jurisdiction under 28 U.S.C. § 1291. *See Perry v. Schwarzenegger*, 630 F.3d 898, 902-903 (9th Cir. 2011) (per curiam). This court has jurisdiction to decide if the District Court had jurisdiction, but it would have jurisdiction to proceed to the merits only if the question of the District Court's jurisdiction is resolved in the Plaintiffs' favor. *See Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 88-89, 101-102 (1998).

## STATEMENT OF THE ISSUES

1. Do organizations of attorneys representing inmates sentenced to death have standing to challenge the regulations issued by the Attorney General to implement Chapter 154 of Title 28 of the United States Code, "Special Habeas Corpus Procedures in Capital Cases"?

2. Does a federal district court have jurisdiction to issue a pre-enforcement injunction against the implementation of these regulations, or is any challenge to the regulations required to be made in the certification proceedings assigned to the exclusive jurisdiction of the Court of Appeals for the District of Columbia Circuit by 28 U.S.C. § 2265(c)(2)?

3. Is a challenge to the regulations "ripe" before they have been applied to any particular certification application?

4. Are the regulations so procedurally deficient as to warrant enjoining their implementation?

5.   Are the regulations invalid for failure to provide sufficient "definitional content" or because they do not resolve disputed legal questions regarding the continued validity of judicial interpretations of the statute as it existed prior to its amendment in 2006?

6.   Did the District Court violate Rule 19 of the Federal Rules of Civil Procedure by effectively enjoining pending applications of the States of Arizona and Texas in a case where those states are not parties?

7.   Did the District Court abuse its discretion by failing to consider the important public interest in the implementation of the long-delayed Chapter 154?

## STATEMENT OF THE CASE

In 1996, Congress passed a landmark reform of habeas corpus law for the specific purpose of reducing the extreme delay in the execution of capital judgments, as reflected in the title of the act: the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA).  This act added Chapter 154 to Title 28 of the United States Code, providing expedited processing of capital cases in federal habeas corpus if states had or adopted mechanisms to provide qualified and adequately funded representation in state postconviction proceedings.  *See Calderon v. Ashmus*, 523 U.S. 740, 742- 43 (1998).

In 2006, Congress amended AEDPA to provide that the determination of whether a state had established a qualifying mechanism would be made initially by the Attorney General of the United States with *de novo* review by

the Court of Appeals for the D.C. Circuit.  *See* 28 U.S.C. § 2265(a)(1) & (c).[1]
Congress further directed the Attorney General to "promulgate regulations
to implement the certification *procedure* under subsection (a)."  § 2265(b)
(emphasis added).

Despite the purpose of the act to reduce delay, the Attorney General did
not promulgate a final rule until two and a half years after enactment.  *See*
Brief for Appellant in Case No. 14-16928 at 5 ("Govt. Brief").  Plaintiff
Habeas Corpus Resource Center filed an action challenging the rule on notice
grounds in the same court as the present action, and the District Court
preliminarily enjoined enforcement.  *See ibid.*

Rather than appealing this ruling, the Department of Justice withdrew the
rule and, despite the purpose of the act to reduce delay, still had not
promulgated a new final rule as of April 18, 2013.  On that date, the Attorney
General of Arizona applied for certification notwithstanding the absence of
a final rule.  *See* ER 38.  The Department responded in a letter, ER 42, stating
in essence that it would not proceed until the final rule had been
promulgated.

The Department promulgated a new final rule on September 23, 2013,
over seven years after the 2006 amendments.  *See* Addendum 3.  The new
rule granted the capital inmates major concessions of dubious legality,
including a five-year expiration on certifications, *see* 28 C.F.R. § 26.23(e),

---

1. Unless otherwise specified, all further section references are to Title 28 of
   the United States Code.  Section 2265 is reprinted in the Addendum to
   this brief.

and presumptive requirements for qualification of counsel more stringent than those Congress has enacted for federal capital cases. *Compare* 28 C.F.R. § 26.22(b)(1)(i) *with* 18 U.S.C. § 3599(c).

Unsatisfied with these concessions, Plaintiffs Habeas Corpus Resource Center and the Federal Public Defender for the District of Arizona filed the complaint in the present action. The District Court issued a temporary restraining order and an order to show cause for a preliminary injunction. *See* ER 47, item 26. Appellant Marc Klaas filed a motion to intervene, which the court denied. *See* ER 47-48, items 29 & 35. An appeal from that denial is pending as case No. 14-15113. On December 4, 2013, the District Court issued a preliminary injunction.

On August 7, 2014, the District Court ruled on cross-motions for summary judgment. In Part I of the order, the court rejected the Government's objections on standing, adequacy of the AEDPA statutory review process, and ripeness. The court made no mention of the requirements of Rule 19 of the Federal Rules of Civil Procedure or the fact that the interests of the States of Arizona and Texas, not parties to this action, in the determination of their pending applications for certification were impaired by an injunction against implementation of the regulations. *See* ER 10-15.

In Part II and the first Part III of the order, the District Court rejected Plaintiffs' claims regarding the adequacy of the procedure for promulgating the regulation under the Administrative Procedure Act and granted summary

judgment to the Government on the first and second causes of action.  *See* ER 15-21.  The Plaintiffs did not cross-appeal these rulings.

In a second Part III and Part IV of the order, the District Court granted summary judgment to the Plaintiffs regarding the substance of the rule.  The second Part III relates to the procedure established by the rule, *see* ER 21-28, and Part IV relates to a claim of arbitrariness in the substantive criteria for certification.  *See* ER 28-34.  The conclusion of the order provides,

> "Defendants may not put into effect the rule entitled, 'Certification Process for State Capital Counsel Systems,' published at 78 Fed. Reg. 58,160 (Sept. 23, 2013).  Defendants must remedy the defects identified in this order in any future efforts to implement the procedure prescribed by chapter 154."

ER 35.  The second sentence was a bolt from the blue.  The question of the legality of implementing Chapter 154 without regulations had not been briefed or argued by any party.

On September 19, 2014, with his intervention appeal still pending, Marc Klaas filed a protective notice of appeal as authorized by this court's precedents.  *See Perry*, 630 F.3d at 902-903.  This is the present appeal, No. 14-16806.  The Government subsequently filed its own notice of appeal, currently pending in this court as case No. 14-16928.

On December 12, 2014, Plaintiffs/Appellees moved to dismiss this appeal. Appellant filed opposition to this motion on December 23, 2014.  On February 18, 2015, this motion remained pending and Appellant Klaas was unsure if he would have an opportunity to brief the merits of the case as a party.  For this reason, he filed a motion for leave to file an amicus brief,

along with Edward Hardesty, accompanied by the proposed brief. On March 30, 2015, the court denied Plaintiffs' motion to dismiss without prejudice to renewal of the argument in the briefs and *sua sponte* consolidated the two appeals from the final judgment and the intervention appeal.

On April 27, 2015, Loretta E. Lynch succeeded defendant Eric H. Holder, Jr. as Attorney General of the United States. Substitution as a party is automatic. *See* Fed. R. App. P. 43(c)(2).

## INCORPORATION OF GOVERNMENT'S ARGUMENTS

Pursuant to Federal Rule of Appellate Procedure 28(i), Appellant Marc Klaas adopts Parts I and II of the Brief for Appellants (the Department of Justice and the Attorney General) in consolidated case No. 14-16928 except for Parts II A 3 and II B 2.

This brief replicates rather than adopts by reference many of the arguments previously submitted by Mr. Klaas as amicus curiae in case No. 14-16928 before the cases were consolidated. The motion to file that brief remains pending, so it is unknown whether it will be filed.

## SUMMARY OF ARGUMENT

The District Court had no jurisdiction to hear this pre-enforcement challenge. When a statute provides a specific mode of review for agency decisions but is silent about pre-enforcement challenges, jurisdiction to entertain such challenges depends on the structure, objectives, and legislative history of the statute as well as its language. For the act at issue in this case,

allowing the District Court to hear this challenge would amount to an evasion of the review scheme established by Congress.

The substantive regulation in this case is a mere "interpretive" regulation to inform the public of how the Attorney General interprets the statute. It is not a "legislative" regulation having the force of law. As such, it is not subject to a "void for vagueness" challenge.

Absent exceptions not applicable here, an administrative agency has complete discretion to resolve questions of interpretation of a statute through rulemaking, case-by-case adjudication, or a combination. There is no requirement that the specifics of implementation of the statute be established by rulemaking rather than adjudication.

This case is not ripe. Regulations are not ordinarily ripe for review until they have been applied to particular circumstances. No exception applies in this case. The regulation does not command or forbid the Plaintiffs or anyone else to do anything. It only establishes the procedure for certifications and some rebuttable presumptions that the Department of Justice intends to employ in making its decisions. Any objections to the substance or procedure can be heard in the judicial forum designated by Congress before any concrete effect is felt. Mere uncertainty as to the application of the law has been specifically rejected by the Supreme Court as a cognizable hardship for the purpose of ripeness analysis.

The Plaintiffs do not have standing. In addition to the reasons stated in the Government Brief, capital defense lawyers are not within the "zone of interests" protected by the Antiterrorism and Effective Death Penalty Act of

1996. Having sought relief only on their own behalf, and not as representatives of their clients, the Plaintiffs do not have standing.

The States of Arizona and Texas have pending applications for certification with the United States Department of Justice. The injunction granted in this case effectively halts those pending proceedings. The States therefore have an interest which may be impaired as a practical matter, and under Rule 19 of the Federal Rules of Civil Procedure, any relief granted must be shaped so as not to impair the interests of the absent party. The injunction granted violates Rule 19 to the extent it prevents or delays these applications or resolves issues to be decided in them.

Contrary to established law on injunctions, the District Court completely failed to consider the public interest. The proper balancing clearly weighs against enjoining the implementation of this important law.

## ARGUMENT

### I. The District Court has no jurisdiction to hear a challenge to the substance of the rule.

This case involves a "pre-enforcement" challenge to a regulation, one filed to enjoin implementation of the regulation before the agency has applied it to any particular circumstances. In *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200, 212 (1994), the Supreme Court distinguished "claims considered 'wholly "collateral" ' to a statute's review provisions" from those that "require interpretation of the parties' rights and duties under" the regulation and the statute it implements. *See id*. at 214. As originally filed and at the preliminary injunction stage, this case involved some claims that were

arguably "collateral" in that they claimed violations of the Administrative Procedure Act's notice-and-comment requirements. *See* Govt. ER 1_41-44[2] (Order Granting Preliminary Injunction). In the final decision, however, the District Court granted the Defendants' motion for summary judgment on these causes of action. *See* ER 19, 21. The Plaintiffs did not cross-appeal this decision. The present appeal is from the District Court's grant of summary judgment on the Plaintiffs' challenges to the rule itself.

Where Congress has vested exclusive jurisdiction to review agency actions in one court, an attack on implementing regulations in another court may be an evasion of that exclusive jurisdiction. *See United States v. Dunifer*, 219 F.3d 1004, 1007 (9th Cir. 2000); *see also Minority Television Project, Inc. v. FCC*, 736 F.3d 1192, 1211 (9th Cir. 2013) (en banc) (citing *Dunifer*). Such evasion must not be allowed, *Dunifer*, *supra*, at 1007, but that is exactly what the Plaintiffs seek to do in the present case.

Statutes which provide an exclusive mechanism for judicial review of agency orders or adjudications but which do not specifically address pre-enforcement challenges to the implementing regulations are fairly common, and there is a substantial body of case law on the question of whether such challenges may be brought under more general sources of jurisdiction, including the Administrative Procedure Act. *Abbott Laboratories v. Gardner*, 387 U.S. 136, 139-140 (1967), framed the question as "whether Congress by the [act in question] intended to forbid pre-enforcement review

---

2. Excerpts of Record filed by Defendant United States Department of Justice in case No. 14-16928, volume 1, pages 41 to 44.

of this sort of regulation promulgated by the" responsible agency. *Abbott Laboratories* is the case generally regarded as having opened up regulations to pre-enforcement review. *See* 2 Richard J. Pierce, Administrative Law Treatise § 15.14, at 1359-1360 (5th ed. 2010) (cited below as "Pierce"). In that case, the Supreme Court "conclude[d] that nothing in the Food, Drug, and Cosmetic Act itself precludes this action," 387 U. S. at 148, but the question must be asked anew for each statute.

In *Block v. Community Nutrition Institute*, 467 U.S. 340, 345 (1984), the Supreme Court held that

> "[w]hether and to what extent a particular statute precludes judicial review is determined not only from its express language, but also from the structure of the statutory scheme, its objectives, its legislative history, and the nature of the administrative action involved."

In *Thunder Basin*, 510 U.S. at 207, the high court applied *Block* to the question of "delayed judicial review," whether an allegedly aggrieved party must wait for the judicial review that follows an administrative determination or whether he can file suit immediately. The District Court in that case enjoined the enforcement of a regulation that had been adopted to implement the Federal Mine Safety and Health Amendments Act of 1977 (the "Mine Act"). *See id.* at 202-203, 205-206. This act, like the act in the present case, provided for administrative determination and judicial review in the Court of Appeals of particular cases but was "facially silent with respect to pre-enforcement claims." *Id.* at 208.

The Tenth Circuit held that allowing this review " 'would permit preemptive strikes that could seriously hamper effective enforcement of the

Act, disrupting the review scheme Congress intended.' " *Id*. at 206 (quoting *Thunder Basin Coal Co. v. Martin*, 969 F.2d 970, 975 (1992)). The Supreme Court affirmed. The court noted the legislative history of the Mine Act, with particular emphasis on Congress's concern that the process was too cumbersome and its intent to strengthen and streamline its enforcement. *Id*. at 209-211, 216. The Supreme Court noted that this difference in legislative purpose distinguished the Mine Act from the statute at issue in *Abbott Laboratories*. *Id*. at 212. For the statute in the present case, it is beyond dispute that curbing delays is *the* central purpose of the habeas reforms of the Antiterrorism and Effective Death Penalty Act of 1996, *see*, *e.g.*, 142 Cong. Rec. 7562, col. 3 (1996) (statement of Sen. Feinstein); *Schriro v. Landrigan*, 550 U.S. 465, 475 (2007), and that congressional frustration with the failure to implement Chapter 154 was the motivation behind the 2006 amendments. *See* Streamlined Procedures Act of 2005, Hearing before the Subcommittee on Crime, Terrorism, and Homeland Security of the Committee on Judiciary, House of Representatives, 109th Cong., 1st Sess., Serial No. 109-82, pp. 82-83 (2005) (statement of Mr. Lungren) (cited below as "Streamlined Procedures Act Hearing").[3]

---

3. As often happens in Congress, language considered in committee hearings for a bill that did not pass was amended into another bill at the last minute. H.R. 3035 § 9 contained amendments to sections 2261 and 2265 establishing a certification procedure largely the same as that adopted in Pub. L. 109-177, § 507, 120 Stat. 250, and the hearing on it may be considered legislative history of the language adopted to the extent it is the same.

Claims asserted outside the statutory review procedure may be "wholly collateral" to those review provisions. See *Thunder Basin*, 510 U.S. at 212. Claims are not collateral when they "require interpretation of the party's rights and duties under" the statute to be enforced in the administrative proceeding. *Id.* at 214. The heart of the present case is the criteria by which it will be decided whether a State can be certified under Chapter 154. Those are precisely the questions that Congress assigned to the Attorney General to decide with judicial review in the exclusive jurisdiction of the Court of Appeals for the D.C. Circuit.

*Thunder Basin* also distinguished *McNary v. Haitian Refugee Center, Inc.*, 498 U.S. 479 (1991) as a case where precluding the suit in district court would, as a practical matter, leave the plaintiffs without any meaningful judicial review. *See* 510 U.S. at 213, 215. In the present case, as in *Thunder Basin*, the plaintiffs, or at least the prisoners they represent, can obtain review of their claims in the judicial forum Congress has designated.

Despite a serious doubt of its jurisdiction, the District Court made no attempt to distinguish *Thunder Basin* but simply ignored it. Plaintiffs attempted to brush the case off as a narrowly limited one.

> "Amici and Defendants misinterpret *Thunderbird [sic] Basin Coal Co. v. Reich*, which involves only a challenge to a particular outcome resulting from the application of regulatory requirements to a particular entity. *Thunderbird* [sic], 510 U.S. 200, 204-06 (1991) (holding that a mine seeking injunctive relief from regulatory requirement had to proceed through established and detailed administrative procedures for review). That dispute contained no challenge to the legality of the

governing regulations themselves, and is therefore inapplicable here."
ER 36-37.

It is Plaintiffs who misinterpret *Thunder Basin*. The District Court in that case enjoined enforcement of the regulation, *see* 510 U.S. at 205, exactly the action at issue in this case. As more clearly described in the Tenth Circuit's opinion in the case, the issue decided there was "whether the district court had subject matter jurisdiction to grant injunctive relief from enforcement of a regulation under" the act in question. *See Thunder Basin Coal Co. v. Martin*, 969 F.2d 970, 971 (10th Cir. 1992). That is exactly the issue before this court, except that it is under a different act.

If there were any doubt that the same principles apply in a purely facial attack on a regulation, it was eliminated in *Shalala v. Illinois Council on Long Term Care, Inc.*, 529 U.S. 1 (2000). The question in that case was whether persons "needing advance knowledge for planning purposes" can attack a regulation "on general legal grounds" under 28 U.S.C. § 1331 rather than going through the procedure designated by Congress for making claims. *Shalala*, 529 U.S. at 10. The answer was no. *See id.* at 19 (distinguishing *McNary* and citing *Thunder Basin*).

The Supreme Court gave a broad interpretation to *Thunder Basin* in *Elgin v. Dept. of the Treasury*, 132 S.Ct. 2126, 183 L.Ed.2d 1 (2012). In that case, government employees who were fired for failure to register for the draft sought declaratory and injunctive relief that the statute barring them from employment was unconstitutional. *See id.*, 132 S.Ct. at 2131, 183 L.Ed.2d at 13. They contended that "the general grant of federal-question jurisdiction

in 28 U.S.C. § 1331 . . . remains undisturbed unless Congress explicitly directs otherwise." *Id*., 132 S.Ct. at 2132, 183 L.Ed.2d at 14. The Court rejected the argument, relying on *Thunder Basin*. The clear statement requirement "does not apply where Congress simply channels judicial review of a constitutional claim to a particular court. We held as much in *Thunder Basin* . . . ." *Id*.

The *Elgin* Court noted three factors used in determining whether a claim is of the type that Congress intended to be reviewed exclusively within the special statutory review scheme. There is a " 'presum[ption] that Congress does not intend to limit [district court] jurisdiction if "a finding of preclusion could foreclose all meaningful judicial review"; if the suit is "wholly collateral to a statute's review provisions"; and if the claims are "outside the agency's expertise." ' " *Id*., 132 S.Ct. at 2136, 183 L.Ed.2d at 18 (quoting *Free Enterprise Fund v. Public Company Accounting Oversight Bd.*, 561 U.S. 477, 489 (2010), quoting *Thunder Basin*, 510 U.S., at 212-213).

None of those factors is present in this case with regard to the claims at issue in this appeal. The D.C. Circuit is fully capable of deciding whether the procedure for making certification determinations was adequate. Indeed, it will be in a better position to do so with a record of a completed determination.[4] It is also capable of deciding all substantive questions regarding the criteria for certification and indeed is Congress's chosen forum for making those decisions. These questions are not collateral to the review

---

4. This point is related to the "ripeness" issued discussed in Part IV, *infra*, and Part I C of the Government's brief.

of certification decisions but rather go to the heart of them.  The Department of Justice, having studied this problem through multiple rounds of publication and comment, has as much expertise on these issues as anyone and will acquire more as certification decisions accumulate.

In the present case, there is an additional, powerful reason in the structure of the statute for finding that it precludes the pre-enforcement challenge at issue here.   Unlike the cases noted above, the authority to review administrative determinations under the statute is not vested in courts of appeals generally but rather in one specific court of appeals.  Congress was surely aware that questions of interpretation would inevitably arise regarding this statute, as they do for nearly all statutes.  If all the cases are channeled to one court, there will be no divisions of authority.  On the other hand, if the present suit is allowed and the Plaintiffs prevail, the Department of Justice must promulgate a new rule, and that new rule must pass muster with the District Court or this court.  But what happens when a certification decision pursuant to that rule comes before the court designated by Congress, the Court of Appeals for the D.C. Circuit?  The rule would not be the product of a normal administrative proceeding, but rather it would be shaped by the demands of another court, one of the courts Congress specifically wanted to remove these decisions from.  *See* Streamlined Procedures Act Hearing, *supra*, at 82-83.  Would such a rule be entitled to any deference whatsoever?  Particularly in light of the congressional command for *de novo* review, *see* 28 U.S.C. § 2265(c)(3), a prior court interpretation in this case and a

regulation resulting from it must either be a nullity and a waste of time and resources or else an interference with the congressional design.

In light of "the legislative history's clear concern with channeling and streamlining the [qualification] process," *Thunder Basin*, 510 U.S. at 216, section 2265 should be understood to preclude the suit in this case.

## II. As an interpretive regulation that does not regulate conduct or speech, the substantive portions of the rule are not subject to a vagueness challenge.

### A. Prohibitions Versus Self-Guidance.

The District Court found the regulation in this case to be invalid in its substantive content by relying on a perceived deficiency in "definitional content," citing *Pearson v. Shalala*, 164 F.3d 650, 660 (D.C. Cir. 1999). *See* ER 28. This is a species of "void for vagueness" challenge. The District Court's blanket assertion that all "final regulations" are subject to such scrutiny is incorrect.

In *City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 289 (1982), the Supreme Court noted that " '[i]t is a basic principle of due process that an enactment is void for vagueness if its *prohibitions* are not clearly defined,' " quoting *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972) and adding the emphasis on "prohibitions." The regulation in *Pearson* imposed a restriction on speech. *See* 164 F.3d at 654. It was in that particularly sensitive context that the court said, "It simply will not do for a government agency to declare—without explanation—that *a proposed course of private action* is not approved." *Id*. at 660 (emphasis added).

17

*South Terminal Corp. v. EPA*, 504 F.2d 646 (1st Cir. 1974) is not a speech case, but it does involve the government prohibiting the use of private property. *See id*. at 655. The prospective applicants referred to in that case who would be "utterly without guidance as to what [they] must prove and how," *id*. at 670, were people who would be prohibited from making an otherwise lawful use of their land if they did not get a permit.

These cases do not establish an overarching rule that all regulations are subject to invalidation merely because they state criteria in general terms. That is particularly true when the regulation does not "regulate" in the sense of ordering anyone to do or refrain from anything but merely provides some additional guidance to an agency charged with implementing a statute which itself has generally worded criteria.

The Eleventh Circuit noted the difference in *Woodruff v. Dept. of Labor*, 954 F.2d 634 (1992). The allegedly vague rule in question concerned whether a federal "employee was in the 'performance of duty' at the time of his injury," *see id*. at 639, a determination that would make him eligible for federal employee compensation and ineligible for a federal tort claim. After noting the principles from *City of Mesquite* and *Grayned*, the court held,

> "Section 2-804-4 does not attempt to guide conduct, but is merely an interpretive rule for the OWCP to follow in making FECA coverage determinations. Mrs. Woodruff's assertion that it is subject to the void-for-vagueness doctrine is wholly without merit." *Id*. at 642.

The Federal Circuit expanded on this principle in *Nyeholt v. Secretary of Veterans Affairs*, 298 F.3d 1350, 1356 (2002).

"Consistent with [*Grayned*'s] approach, the [Supreme] Court has steadfastly applied the void-for-vagueness doctrine only to statutes or regulations that purport to define the lawfulness of conduct or speech. [Citations.] We are unable to find, and Nyeholt has not pointed us to, any controlling precedent holding or any case in any other jurisdiction supporting the notion that a statute or regulation that does not purport to define the lawfulness or unlawfulness of either conduct or speech can be challenged under the void-for-vagueness doctrine."

It should be self-evident that the substantive provisions of this regulation neither prohibit nor require anyone to do or say anything and therefore are not subject to vagueness challenge under *City of Mesquite*, *Woodruff*, and *Nyeholt*. Because the character of the provisions as an "interpretive" rule rather than a "legislative" rule has implications in addition to its bearing on this aspect of the case, though, a few words on that distinction are in order.

## B. Legislative v. Interpretative Regulations.

The Administrative Procedure Act exempts from the notice-and-comment requirement a sweeping list of pronouncements that would otherwise fall under the broad definition of rules—"interpretative rules[5], general statements of policy, or rules of agency organization, procedure, or practice . . . ." 5 U.S.C. § 553(b). What is left of the set of "rules," after all those subsets are subtracted, is the category called "substantive rules," *see Colwell v. Department of Health and Human Services*, 558 F.3d 1112, 1124 (9th Cir. 2009) or "legislative rules." *See Gunderson v. Hood*, 268 F.3d 1149, 1154

---

5. "Interpretive rule," the Supreme Court recently noted, "is the more common phrasing today." *Perez v. Mortgage Bankers Assn*., 135 S.Ct.1199, 1204, n.1 (2015).

(9th Cir. 2001). The distinction goes beyond the notice-and-comment requirement. Interpretive rules are entitled to a lesser degree of deference from the courts. *See Perez*, 135 S.Ct. at 1208, n.4.[6] As noted *supra*, at 18, an interpretive rule is not subject to vagueness challenge.

Telling the difference between "legislative rules" and "interpretive rules" can be difficult, *see*, *e.g.*, *Gunderson v. Hood*, 268 F.3d at 1154, but there is one clear and rudimentary prerequisite for a legislative rule. A legislative rule has the force and effect of law, not merely persuasive effect as an interpretation of the statute, and an agency cannot promulgate such a rule unless it has been delegated quasi-legislative authority by Congress. *See Chrysler Corp. v. Brown*, 441 U.S. 281, 302-303 (1979); *see also Gonzales v. Oregon*, 546 U.S. 243, 255-256 (2006); *National Park Hospitality Assn. v. Department of Interior*, 538 U.S. 803, 808 (2003); 1 Pierce, § 6.2, at 408; 3 Charles H. Koch, Administrative Law and Practice § 10:21, at 427-248 (3d ed. 2010) (cited below as "Koch").

In the 2006 amendments to the Antiterrorism and Effective Death Penalty Act of 1996, Congress has not merely omitted any authority to promulgate substantive rules having the force of law, it has expressly forbidden any additions to the statutory requirements. Congress gave the Attorney General authority to "promulgate regulations to implement the certification *procedure* under subsection (a)." 28 U.S.C. § 2265(b) (emphasis added). If

---

6. Under the unusual statute at issue in this case, mandating *de novo* review, a stronger than usual argument can be made that they are entitled to no deference at all.

Congress had intended to give the Attorney General the power to make substantive rules with the force of law, it would not have limited the grant of regulatory authority to procedure. Quite the contrary, Congress expressly forbade the creation of any additional criteria for certification beyond those specified in the statute itself, either by the executive branch or the judiciary. *See* 28 U.S.C. § 2265(a)(3). The Attorney General has no authority to "impose new rights or obligations," which is the hallmark of a legislative rule, *see Mora-Meraz v. Thomas*, 601 F.3d 933, 940 (9th Cir. 2010), but only to give his opinion regarding the meaning of the substantive rules Congress has established in the statute, the hallmark of an interpretive rule. *See ibid*.

With or without authority to issue legislative rules, an agency can "issue interpretive rules . . . to advise the public of the agency's construction of the rules it administers." *Gunderson*, 268 F.3d at 1154; *see also National Park Hospitality*, 538 U.S. at 808-809. Although the Department did not explicitly state whether it intended to promulgate a legislative rule or an interpretive one, it is clear from the authority cited that the rule is merely interpretive. In response to comments challenging whether the Department had any authority to articulate substantive standards, the preamble to the final rule cited an Office of Legal Counsel opinion, which is also cited by the Department in its brief. *See* Certification Process for State Capital Counsel System, 78 Fed. Reg. 58160, 58161, col. 3 (Sept. 23, 2013), Govt. Brief A10; U.S. Dep't of Justice, Off. of Legal Counsel, The Attorney General's Authority in Certifying Whether a State Has Satisfied the Requirements for Appointment of Competent Counsel for Purposes of Capital Conviction Review

Proceedings (Dec. 16, 2009), http://www.justice.gov/olc/opiniondocs/capital-counsel-memo.pdf ("OLC Opinion"). This memo addressed to the Attorney General states,

> "pursuant to section 2265(b), you may promulgate regulations that set forth the federal minimum competency standards that you will apply in making certification determinations, although you are not required to take this action."

That describes an interpretive rule. Nowhere in the OLC opinion or the final rule does the Department purport to make any rule with the force of law, binding on courts or the general public. *See Erringer v. Thompson*, 371 F.3d 625, 630 (9th Cir. 2004) ("force of law" as defining characteristic of legislative rule versus interpretive rule); 1 Pierce, § 6.4, at 432-433. The substantive portions of the rule at issue in this case form an interpretive rule, not a legislative rule.

There is simply no reason for a court to enjoin an interpretive rule on vagueness grounds. As the OLC Opinion notes, promulgation of such a rule is not required at all. The agency could proceed to decide particular cases on the unadorned language of the statute. When a particular case reaches judicial review, "it is the court that ultimately decides whether a given regulation [or statute] means what the agency says." *Perez*, 135 S.Ct. at 1208, n.4. If "what the agency says" is unclear, the court would simply proceed directly to the ultimate task of interpreting the statute.

A claim that the Attorney General must make the application of certification requirements certain and predictable in advance makes no sense when considered in light of the fact that no interpretative regulations,

regardless of how concrete and complete, could possibly do so. A State that believes the regulations are too restrictive and not a correct interpretation of the statute would be entitled to have a denial reviewed in the Court of Appeals for the D.C. Circuit, and that court is directed to review the determination *de novo*. § 2265(c)(3). Given that Congress expressly directed that interpretations of the statute by the Attorney General during certification decisions be given no deference at all, would it make sense for Congress to silently authorize controlling force for the Attorney General's interpretations via rulemaking? Such a dramatic skew in the standard of review for two different forms of interpretation should not be assumed in the absence of clear statutory language to that effect, but the language actually authorizes regulations only for matters of procedure, not substance.

Under this unusual statute, the agency is directed to make an initial interpretation of the statutory criteria in determining whether a State qualifies, but the final interpretation is committed to the *de novo* review of a court. Given that structure, nothing the Attorney General put in the interpretive regulations could possibly provide certainty. A regulation cannot be invalid for not doing the impossible.

### III. The Attorney General may (and should) give content to the Chapter 154 standards primarily by adjudicating particular applications rather than specifying details in advance in regulations.

*A. Certification Decisions as Adjudications.*

Administrative law involves two broad classes of decision-making, the quasi-legislative function of rulemaking and the quasi-judicial function of

adjudication. *See*, *e.g.*, *RLC Industries Co. v. Commissioner*, 58 F.3d 413, 417 (9th Cir. 1995); *see also* 5 U.S.C. § 551(5) & (6). In subpart A of the second part III of its opinion, the District Court held that certification decisions made by the Attorney General are rulemaking rather than adjudication, relying primarily on the "broad classes of unspecified individuals" language of *Yesler Terrace Cmty. Council v. Cisneros*, 37 F.3d 442, 448 (9th Cir. 1994). ER 21. This conclusion puts too much weight on the "broad classes" language.

The "broad classes" consideration is just one of many, and it is common for precedents established in adjudications, whether judicial or quasi-judicial, to affect a great many people.

> "Although adjudications usually affect only a relatively small number of people, it is dangerous to incorporate number into the definition. Just as class actions or derivative litigation can affect millions so can administrative adjudications. It is the individualized nature of the decision and the dominant issues involved which stamp an action as adjudication. Adjudications are those decisions which directly affect specific rights or duties regardless of the number of individuals directly affected."
> 1 Koch, § 2.11, at 71.

A certification decision involves a concrete dispute between a State and the murderers it has sentenced to death. The State asserts that it has established a mechanism that meets the criteria of § 2265(a)(1), and it can be expected that the condemned murderers will dispute that characterization. The resolution of the dispute resolves the issue of whether Chapter 154 will apply in a federal habeas corpus petition for any inmate for whom "counsel

was appointed pursuant to that mechanism . . . ." § 2261(b)(2).  The federal habeas court would need to determine whether the latter criterion was met, but the issue of the establishment of the qualifying mechanism is resolved.

Elsewhere in its opinion, the District Court treats the certification process as an adjudication.  In the discussion of the allegedly deficient process, the District Court says, "Once a state has made its request, the burden shifts to public to demonstrate that the state does not comply."[7]  Burden of proof is an issue in the judicial function, not the legislative.  Nobody has a "burden of proof" in a congressional committee hearing.  The fact that burden of proof in certification decisions is an issue in this case points to the decision being a quasi-judicial rather a quasi-legislative one.

A similar implicit concession that the process is quasi-judicial appears in the vagueness discussion.  "An agency cannot leave a prospective applicant 'utterly without guidance as to what he must prove and how.' "  ER 29. Again, this is the language of adjudication, not legislation.

Even on the "broad classes" factor itself, the class of persons affected is not broad in comparison to other government decisions but rather exceedingly narrow.  California has the largest death row, presently at 754, Cal. Dept. of Corrections and Rehabilitation, Condemned Inmate Summary List 4 (April 6, 2015), http://www.cdcr.ca.gov/Capital_Punishment/docs/ CondemnedInmateSummary.pdf, with new inmates coming in at a dozen or

---

7. It would, of course, be primarily if not exclusively the condemned murderers and their attorneys, not the general public, who would be making the opposition.  As the Defendants have explained, the alleged shift in burden is a phantom.  *See* Govt. Brief  at 33-34.

two a year. *See id*. at 2. Decisions of the National Labor Relations Board routinely affect more people than that, often vastly more, yet it makes its policy almost entirely by adjudication and not rulemaking, much to the dismay of commentators, *see* 1 Pierce, § 6.9, at 505 ("NLRB's notorious refusal to use its rulemaking authority"), but with the approval of the Supreme Court. *See id*. at 503-505.

The decision of whether a state has established a qualifying mechanism was an adjudication when it was assigned to the habeas courts before 2006, and it remains one now that it is assigned to the Attorney General with *de novo* review by the D.C. Circuit.

### B. Filling the Gaps by Regulation and Adjudication.

Among the reasons given by the District Court for enjoining the regulations at issue in this case were that the criteria for qualification of counsel were too open-ended, leaving questions to be resolved in the course of adjudicating individual state petitions. For example, along with particular standards of counsel competence, the regulation allows for the possibility of other variations which "reasonably assure a level of proficiency appropriate for State post-conviction litigation in capital cases." ER 29. The District Court also concluded that the regulation was "arbitrary and capricious" because it did not sufficiently delve into the complex legal questions of what effect would be given to judicial interpretations of the statute rendered prior to its amendment. ER 31-33.

The District Court appears to have proceeded on a fundamentally erroneous concept of a basic principle of administrative law. It is not at all

unusual for Congress to enact a statute in general terms and allow an administrative agency to make those terms more specific.

> "The law clearly establishes that an agency may choose to establish interpretations of law or make administrative policy through adjudication *even if it has rulemaking authority*. Absolute discretion to choose adjudication was confirmed by the Supreme Court in *SEC v. Chenery* (*Chenery II*) [332 U.S. 194 (1947)]." 1 Koch, § 2.12, at 81-82 (italics added, footnotes omitted); *NLRB v. Bell Aerospace Co.*, 416 U.S. 267, 294 (1974).

The regulations in the present case would have been valid if they had been limited solely to matters of the certification procedure and said nothing at all about the criteria for qualification.

There are some limitations when it comes to the application of rules created by adjudication rather than rulemaking.

> "Such a situation may present itself where the new standard, adopted by adjudication, departs radically from the agency's previous interpretation of the law, where the public has relied substantially and in good faith on the previous interpretation, where fines or damages are involved, and where the new standard is very broad and general in scope and prospective in application." *Pfaff v. HUD*, 88 F.3d 739, 748 (9th Cir. 1996) (citing *Bell Aerospace*, 416 U.S. at 294); *see* 1 Pierce, § 6.9, at 514 (due process limits).

For example, suppose the Attorney General's interpretation of the criteria for qualified counsel made in a certification proceeding departed radically from prior understandings. A court would be warranted in limiting the retroactivity of the certification with regard to the timely filing requirement,

so as not to cut off an otherwise timely application made within a few months of the certification. *See Perez*, 135 S.Ct. at 1209-1210, n.5.

The specter of wholesale cutting off of otherwise timely habeas petitions by petitioners who are surprised by a ruling on certification is a scare tactic. When AEDPA was first enacted,

> "the Courts of Appeals . . . uniformly created a 1-year grace period, running from the date of AEDPA's enactment, for prisoners whose state convictions became final prior to AEDPA,"

*Duncan v. Walker*, 533 U.S. 167, 183 (2001) (Stevens, J., concurring), despite the lack of any statutory language authorizing such a grace period. The Supreme Court's subsequent generous interpretation of the parallel time limit in Chapter 153 seems to provide more than enough flexibility to make such adjustments. *See Holland v. Florida*, 560 U.S. 631, 649 (2010) (equitable tolling); *McQuiggin v. Perkins*, 133 S.Ct. 1924, 1932-1934, 185 L.Ed.2d 1019, 1032-1034 (2013) (exception for miscarriage of justice, despite absence of any basis for one in the statutory language); cf. *id.*, 133 S.Ct. at 1937, 185 L.Ed.2d at 1036-1037 (Scalia, J., dissenting). These limitations on application can be made as the need arises and do not require that the Attorney General act by rulemaking rather than adjudication.

Congress can, when it chooses, require an agency to adopt its interpretations by rulemaking rather than adjudication. *See* 1 Pierce, § 6.9, at 502. No such intent appears in the statute in this case. The statutory mandate is expressly for the certification procedure, § 2265(b), not the substantive criteria. As to the latter, Congress has expressly forbidden

making the criteria any more restrictive than the statute itself. *See* § 2265(a)(3).

Nor is a case-by-case adjudication of whether various state systems meet the statutory criteria inconsistent with the overall design of the chapter. Indeed, in its original form, with substantive criteria essentially the same as present law,[8] the question of whether a state system qualified was to be made by courts within habeas corpus cases, *see Calderon v. Ashmus*, 523 U.S. 740, 748 (1998), with no administrative involvement at all. The Powell Committee, in the report that proposed what eventually became Chapter 154, considered spelling out criteria in advance and expressly rejected that step.

> "Central to efficacy of this scheme is the development of standards governing the competency of counsel chosen to serve in this specialized and demanding area of litigation. This mechanism is to be established by state statute or by rule of the state court of last resort. The Committee believes that it is more consistent with the federal-state balance to give the States wide latitude to establish a mechanism that complies with subsection (b). The final judgment as to the adequacy of any system for the appointment of counsel under subsection (b), however, rests ultimately with the federal judiciary. If prisoners under capital sentence in a particular State doubt that a State's mechanism for appointing counsel comports with subsection (b), the adequacy of the system—as opposed to the competency of particular counsel—*can be settled through litigation*." Judicial Conference of the United States, Ad Hoc Committee on Federal Habeas Corpus in Capital Cases, Committee Report, *reprinted in* 135 Cong. Rec. 24694, 24696, col. 2 (1989) (emphasis added).

---

8. *Compare* § 2265(a)(1) *with* former § 2261(b), Pub. L. 104-132 § 107, 110 Stat. 1221-1222.

From the very beginning, then, the Powell Committee recommended and Congress adopted a system in which the criteria would not be established through the legislative authority but instead be worked out in the judicial process by judging specific state systems through adjudication. When Congress decided to place an administrative step in the process in 2006, is there any reason to believe it intended that the Attorney General's initial determination of adequacy be made through the quasi-legislative process of rulemaking rather than the quasi-judicial process of adjudication? Quite the contrary, Congress's express authorization of rulemaking was limited to procedure. *See* § 2265(b). Allowing States to develop their own criteria and deciding case-by-case whether those criteria were adequate was the plan from the beginning.

Thus, even if the Attorney General had the authority to make rules with the force of law in this matter, he would not have been required to do so but could have proceeded to put "meat on the bones" of the statute entirely in the process of determining state certification procedures. It stands to reason that establishing presumptive guidelines and leaving the door open to other variations to be decided in actual certification proceedings is also valid.

## C. *Continued Validity of Pre-2006 Chapter 154 Precedents.*

Of all the strange holdings in the District Court's opinion, the strangest is the holding that the regulation is "arbitrary and capricious" because it does not resolve hotly disputed questions regarding the continued validity of cases interpreting Chapter 154 as it existed prior to the 2006 amendments. *See* ER 31-33. The opinion is remarkable in the absence of even a single citation

to support the novel proposition that a regulation implementing an amended statute is required to resolve the status of the pre-amendment case law. The District Court got no help from the Plaintiffs, who also failed to cite a single authority in support of this proposition.

As is well known, the proponents of the 2006 amendments were deeply dissatisfied with the way the federal courts had handled Chapter 154. What was intended to be the premier reform of AEDPA had been effectively nullified with not a single state getting the benefits promised. Beyond question, the amendment did abrogate this court's holding in *Ashmus v. Woodford*, 202 F.3d 1160, 1166 (9th Cir. 2001) that California did not qualify because certain elements were in the California Supreme Court's Internal Operating Practices and Procedures rather than the Rules of Court. The language on which that holding was based has been repealed. Statements of proponents also indicated an intent to abrogate *Spears v. Stewart*, 283 F.3d 992 (9th Cir. 2001). *See* OLC Opinion 12.

As for the status of other precedents, an administrative regulation would not seem to be an apt place to resolve the question. Examination of the language and history of the statute and comparison to the precedents to determine if they are still good law is a quintessentially judicial function. While the Attorney General would have to make a determination upon initial consideration of an application if the issue arose, the final determination would necessarily be made in the *de novo* review by the D.C. Circuit. By demanding that the Attorney General preempt this judicial function by

resolving the issue in regulations, the Plaintiffs seek to evade the process that Congress designated for resolution of questions of this type.

Leaving these issues to be decided in case-by-case adjudication is fully consistent with both the Administrative Procedure Act and with Chapter 154 itself. This process is not only permissible, it is preferable.

## IV. The case is not "ripe."

"Under the terms of the APA, respondent must direct its attack against some particular 'agency action' that causes it harm. Some statutes permit broad regulations to serve as the 'agency action,' and thus to be the object of judicial review directly, even before the concrete effects normally required for APA review are felt. Absent such a provision, however, *regulation is not ordinarily considered the type of agency action 'ripe' for judicial review under the APA* until the scope of the controversy has been reduced to more manageable proportions, and its factual components fleshed out, by some concrete action applying the regulation to the claimant's situation in a fashion that harms or threatens to harm him. (The major exception, of course, is a substantive rule which as a practical matter requires the plaintiff to adjust his conduct immediately. Such agency action is 'ripe' for review at once, whether or not explicit statutory review apart from the APA is provided. [Citations.])" *Lujan v. National Wildlife Federation*, 497 U.S. 871, 891 (1990) (emphasis added).

As *Lujan* indicates, allowing an attack on a regulation prior to any enforcement is the exception, not the rule. The "major exception" for "substantive rule[s]," requiring an immediate change in behavior does not apply here. For the reasons described in Part II, *supra*, the regulation in this case cannot and does not have the force of law, determining whether a state qualifies. Where this exception applies, requiring a regulated party to wait

for specific application may create a hardship, but the hardship must be " 'adverse effects of a strictly legal kind.' " *National Park Hospitality Assn. v. Department of Interior*, 538 U.S. 803, 809 (2003) (quoting *Ohio Forestry Assn., Inc. v. Sierra Club*, 523 U.S. 726, 733 (1998)). If a regulation

> " 'do[es] not command anyone to do anything or to refrain from doing anything; [it] does not grant, withhold, or modify any formal legal license, power, or authority; [it] does not subject anyone to any civil or criminal liability; [and it] create[s] no legal rights or obligations,' "

then it does not create the kind of hardship that warrants an exception to the general rule. *Id*. (alterations by the Court). The Supreme Court specifically rejected an argument that "mere uncertainty as to the validity of a legal rule constitutes a hardship for purposes of the ripeness analysis." *Id*. at 811. Mere uncertainty over whether a legal rule will apply to a particular circumstance is no more a hardship, and it presents even greater reasons to wait for the particular application.

In the present case, the uncertainty over whether particular states qualify for certification is the claimed injury. *See* ER 13-14. Obviously, the best way to resolve that uncertainty is to proceed with the certification process. Indeed, it is the only way to resolve it finally. Given the general wording of the criteria in the statute, § 2265(a)(1), and Congress's prohibition against adding additional restrictions, § 2265(a)(3), it is not possible under this statute to establish by rulemaking a set of criteria specific enough that certification decisions can be mathematically predicted in advance.

The District Court's concerns about "bare-bones" applications, *see* ER 26, or *ex parte* communications, *see* ER 33-34, can also be better addressed in

the context of an actual certification proceeding. These concerns may never materialize. If they do, review of an actual decision on its administrative record is superior to considering "abstruse and abstract arguments," *see Natural Resources Defense Council v. Abraham*, 388 F.3d 701, 705 (9th Cir. 2004), about procedure in a brand new type of proceeding with no history to go on.

The issues in this case are not ripe for judicial decision. They should wait for a decision on an actual application and be reviewed in the manner and forum designated by Congress.

### V. Plaintiffs lack standing because their alleged injury does not fall within the "zone of interests" protected by the statute.

Multiple reasons why the Plaintiffs lack standing are explained by Defendants. *See* Govt. Brief at 17-23. Appellant will add one more, with a precedent that is squarely on point.

Justice O'Connor, acting as Circuit Justice on a stay application, explained the rule on standing in the special context of review of administrative actions in *INS v. Legalization Assistance Project of Los Angeles Federation of Labor*, 510 U.S. 1301, 1304-1305 (1993):

> "Congress has in fact considered the proper scope of federal court jurisdiction to review administrative agency actions. It has explicitly limited such review to claims brought by 'person[s] suffering legal wrong[s] because of agency action' (not applicable to the respondent organizations involved here) or by persons 'adversely affected or aggrieved by agency action *within the meaning of a relevant statute*.' 5 U.S.C. § 702 (emphasis added). We have consistently interpreted this

latter clause to permit review only in cases brought by a person whose putative injuries are 'within the "zone of interests" sought to be protected by the statutory provision whose violation forms the legal basis for his complaint.' *Lujan* v. *National Wildlife Federation*, 497 U.S. 871, 883 (1990) *(NWF)*; see also *Clarke* v. *Securities Industry Assn.*, 479 U.S. 388, 396-397 (1987)."

Justice O'Connor concluded that, if presented with the issue, the Supreme Court would hold that the difficulties faced by a legal advocacy organization in representing its clients were not within the zone of interests. *Id.* at 1305. Later in the litigation, this Court accepted Justice O'Connor's analysis regarding standing of the organizations to sue in their own right, although it directed that they be permitted to amend the complaint to establish representative standing for ripe claims of their clients. *See Immigrant Assistance Project of the Los Angeles County Federation of Labor v. Immigration and Naturalization Service*, 306 F.3d 842, 867 (9th Cir. 2002).

In the present case, it could not be seriously contended that Congress passed the Antiterrorism and Effective Death Penalty Act of 1996 to protect the interests of defense organizations as distinct from their clients. Plaintiffs could have named their clients as parties, or they could have alleged representative standing, but they have done neither. If they did either, the court would have to confront whether *Calderon v. Ashmus*, 523 U.S. 740 (1998) bars the suit, which is probably why they did not. For the purpose of the present appeal, it is sufficient that Plaintiffs have no standing, and the injunction should be vacated.

## VI. Under FRCP 19, an injunction effectively halting pending applications of Arizona and Texas cannot be granted in an action to which those States are not parties.

The nominal defendant in this case is the United States Department of Justice, but the real targets are certification applications made or to be made by States. Indeed, the District Court cited the pending application by the State of Arizona and the possibility it might be granted as the basis for the Arizona Federal Defender's standing. *See* ER 13. The District Court noted the pending application of Texas as a reason why the Department must decide by rulemaking whether the Fifth Circuit's pre-amendment decision regarding that state's mechanism remains valid. ER 32.

This court addressed a very similar gambit in *American Greyhound Racing, Inc. v. Hull*, 305 F.3d 1015 (9th Cir. 2002). Opponents of Indian gaming filed a suit against a state governor to enjoin renewing gaming contracts without joining the tribes that were parties to those contracts. *See id.* at 1018. The court found that this stratagem was a violation of Federal Rule of Civil Procedure 19. "This litigation is *aimed* at the tribes and their gaming." *Id.* at 1026 (emphasis in original). Similarly, the present litigation is *aimed* at the States and their pending or potential certification applications. If an indispensable party has sovereign immunity and cannot be joined, the case must be dismissed. *See id.* at 1018.

Arizona applied for certification on April 18, 2013. *See* ER 38. On page 4, Arizona requested that its application be decided within the reasonable time of 90 days. That was over two years ago. The Department of Justice's response, ER 42, implies that the Department will not proceed on the

application, other than preliminary information gathering, until the final rule is in place. This District Court's permanent injunction forbids the Department to proceed without a regulation, *see supra* at 6, despite the lack of any request for such an order or briefing supporting it. Thus in litigation between the Department and two defense agencies, the District Court gratuitously reached out to decide a live dispute between the Department and the State of Arizona.

The decision in this case also impairs the interests of the State of Texas. That State, like Arizona, has a pending certification application which has been halted by this injunction. Prior to the 2006 amendment, the Fifth Circuit held that Texas's mechanism did not comply with the requirements of Chapter 154 as it then read. "Moreover, Texas has failed to comply fully with § 2265's requirements, as it has not 'established by statute, rule of court of last resort, or by another agency authorized by State law' specific, mandatory standards for capital habeas counsel. Therefore, we conclude that Texas is not yet eligible to take advantage of the provisions afforded opt-in states under the AEDPA." *Mata v. Johnson*, 99 F.3d 1261, 1267 (5th Cir. 1996). Congress repealed the language relied on by the *Mata* court, so the continued force of this precedent is at least debatable. *See supra*, at 31 (same language in *Ashmus*). Texas has an interest in having this issue resolved by the mechanism prescribed by Congress—determination by the Attorney General followed by *de novo* review in the D.C. Circuit—but the District Court in this case demands that the Attorney General decide that issue by rulemaking. *See* ER 32.

States have a powerful interest in enforcing their capital punishment laws and in reducing the delay of enforcement through federal habeas corpus. That is the central purpose of the habeas reforms of the Antiterrorism and Effective Death Penalty Act of 1996. "Congress enacted AEDPA to reduce delays in the execution of state and federal criminal sentences, particularly in capital cases . . . ." *Woodford v. Garceau*, 538 U.S. 202, 206 (2003). An interest strong enough to warrant a landmark act of Congress is certainly strong enough to invoke Rule 19 of the Federal Rules of Civil Procedure.

> "Rule 19(a) provides for joinder of a party (again, in the traditional terminology, as 'necessary') if *any* of the following requisites is met: . . . '(2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest . . . .' " *American Greyhound*, 305 F.3d at 1022 (quoting Rule 19) (emphasis in original).

A property interest is not required. The interest of a party to a contract in renewal of that contract, even if voluntary on the part of the other party, is a sufficient interest. *Id*. at 1023. The interest of the States of Arizona and Texas in the timely consideration of their pending applications— consideration already needlessly delayed by the District Court's orders in this case—is surely an interest at least as substantial as the one in *American Greyhound*.

Outright dismissal can be avoided if relief can be shaped to avoid prejudice to the absent party. *See Cook v. Food & Drug Admin.*, 733 F.3d 1, 12 (D.C. Cir. 2013). For example, to the extent the Plaintiffs complain about *ex parte* communications, the Department could be ordered to give notice of

all communications without prejudicing the interests of States. However, no injunction that obstructs or delays the processing of a State's application or resolves disputed questions about the standards to be applied in determining those applications can be entered in the present case without running afoul of Rule 19.

### VII. The District Court completely failed to consider the powerful public interest in the implementation of Chapter 154.

In addition to the reasons in the preceding parts, there is the basic rule on injunctions that the plaintiff must demonstrate, among other factors, "that the public interest would not be disserved by a permanent injunction." *eBay, Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006).

In this case, the public interest extends far beyond the institutional interests of the United States Department of Justice. This case involves the long-delayed enforcement of the criminal judgments of the States in the most important cases, prosecutions for the very worst crimes. States have a compelling interest in the timely enforcement of those judgments, an interest strong enough to motivate the enactment of the major legislation at issue in this case. The surviving family members of the victims of these homicides have a particular interest in timely enforcement, an interest recognized in an act of Congress. 18 U.S.C § 3771(a)(7).

In a shocking display of judicial tunnel vision, the District Court at the preliminary injunction stage simply ignored these other interests and purported to weigh the equities by considering only the harm to the Department. Govt. ER 1_58. The interests of States and victims had been

brought to the attention of the District Court by Appellant Marc Klaas, but the court brushed this aside in a cavalier footnote. *See* Govt. ER 1_36. The decision on the permanent injunction did not consider the public interest factor at all.

Chapter 154 is an important law intended to promote a vital interest in justice in the very worst criminal cases. It has already been badly delayed. Any further delay would require the most compelling justification, and the ones offered by the Plaintiffs and accepted by the District Court are no more than a feather on the scales in comparison.

## CONCLUSION

The injunction issued in this case should be vacated. The District Court should be directed to dismiss the entire case for lack of jurisdiction, lack of standing, and unripeness. If the court does not decide that dismissal or reversal of the entire case is required, at a minimum the District Court should be directed to tailor its injunction so as not to hinder the Department's processing of certification applications or prejudge any issues to be decided on those applications.

April 29, 2015

Respectfully submitted,

s/KENT S. SCHEIDEGGER
*Attorney for Appellant Marc Klaas*

**STATEMENT OF RELATED CASES**

Cases 14-15113 and 14-16928 were consolidated with this case by order of the court on March 30, 2015.

April 29, 2015                                    s/KENT S. SCHEIDEGGER

## CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 32(a)(5), (6), (7)(B) and (C) and Ninth Circuit Rule 32, I certify that the attached Brief for Appellant is proportionally spaced, uses 15-point Times New Roman type and contains  10535  words.

April 29, 2015                              s/KENT S. SCHEIDEGGER

# ADDENDUM

# ADDENDUM CONTENTS

28 U.S.C. § 2265 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

28 C.F.R., Part 26, Subpart B . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

**28 U.S.C. §2265, Certification and Judicial Review**.

(a) Certification.—

    (1) In general.— If requested by an appropriate State official, the Attorney General of the United States shall determine—

        (A) whether the State has established a mechanism for the appointment, compensation, and payment of reasonable litigation expenses of competent counsel in State postconviction proceedings brought by indigent prisoners who have been sentenced to death;

        (B) the date on which the mechanism described in subparagraph (A) was established; and

        (C) whether the State provides standards of competency for the appointment of counsel in proceedings described in subparagraph (A).

    (2) Effective date.— The date the mechanism described in paragraph (1)(A) was established shall be the effective date of the certification under this subsection.

    (3) Only express requirements.— There are no requirements for certification or for application of this chapter other than those expressly stated in this chapter.

(b) Regulations.— The Attorney General shall promulgate regulations to implement the certification procedure under subsection (a).

(c) Review of Certification.—

    (1) In general.— The determination by the Attorney General regarding whether to certify a State under this section is subject to review exclusively as provided under chapter 158 of this title.

(2) Venue.— The Court of Appeals for the District of Columbia Circuit shall have exclusive jurisdiction over matters under paragraph (1), subject to review by the Supreme Court under section 2350 of this title.

(3) Standard of review.— The determination by the Attorney General regarding whether to certify a State under this section shall be subject to de novo review.

**§ 26.4  Other execution procedures.**

Except to the extent a court orders otherwise:

(a) The Warden of the designated institution shall notify the prisoner under sentence of death of the date designated for execution at least 20 days in advance, except when the date follows a postponement of fewer than 20 days of a previously scheduled and noticed date of execution, in which case the Warden shall notify the prisoner as soon as possible.

(b) Beginning seven days before the designated date of execution, the prisoner shall have access only to his spiritual advisers (not to exceed two), his defense attorneys, members of his family, and the officers and employees of the institution. Upon approval of the Director of the Federal Bureau of Prisons, the Warden may grant access to such other proper persons as the prisoner may request.

(c) In addition to the Marshal and Warden, the following persons shall be present at the execution:

(1) Necessary personnel selected by the Marshal and Warden;

(2) Those attorneys of the Department of Justice whom the Deputy Attorney General determines are necessary;

(3) Not more than the following numbers of person selected by the prisoner:

(i) One spiritual adviser;

(ii) Two defense attorneys; and

(iii) Three adult friends or relatives; and

(4) Not more than the following numbers of persons selected by the Warden:

(i) Eight citizens; and

(ii) Ten representatives of the press.

(d) No other person shall be present at the execution, unless leave for such person's presence is granted by the Director of the Federal Bureau of Prisons. No person younger than 18 years of age shall witness the execution.

(e) The Warden should notify those individuals described in paragraph (c) of this section as soon as practicable before the designated time of execution.

(f) No photographic or other visual or audio recording of the execution shall be permitted.

(g) After the execution has been carried out, qualified personnel selected by the Warden shall conduct an examination of the body of the prisoner to determine that death has occurred and shall inform the Marshal and Warden of his determination. Upon notification of prisoner's death, the Marshal shall complete and sign the Return described in § 26.2(b) or any similar document and shall file such document with the sentencing court.

(h) The remains of the prisoner shall be disposed of according to procedures established by the Director of the Federal Bureau of Prisons.

**§ 26.5  Attendance at or participation in executions by Department of Justice personnel.**

No officer or employee of the Department of Justice shall be required to be in attendance at or to participate in any execution if such attendance or participation is contrary to the moral or religious convictions of the officer or employee, or if the employee is a medical professional who considers such participation or attendance contrary to medical ethics. For purposes of this section, the term "participation" includes personal preparation of the condemned individual and the apparatus used for execution and supervision of the activities of other personnel in carrying out such activities.

## Subpart B—Certification Process for State Capital Counsel Systems

SOURCE: 78 FR 58183, Sept. 23, 2013, unless otherwise noted.

**§ 26.20  Purpose.**

Sections 2261(b)(1) and 2265(a) of title 28 of the United States Code require the Attorney General to certify whether a State has a mechanism for providing legal representation to indigent prisoners in State postconviction proceedings in capital cases that satisfies the requirements of chapter 154 of title 28. If the Attorney General certifies that a State has established such a mechanism, sections 2262, 2263, 2264, and 2266 of chapter 154 of title 28 apply in relation to Federal habeas corpus review of State capital cases in which counsel was appointed pursuant to that mechanism. These sections will also apply in Federal habeas corpus review

of capital cases from a State with a mechanism certified by the Attorney General in which petitioner validly waived counsel, petitioner retained counsel, or petitioner was found not to be indigent, as provided in section 2261(b) of title 28. Subsection (b) of 28 U.S.C. 2265 directs the Attorney General to promulgate regulations to implement the certification procedure under subsection (a) of that section.

### § 26.21 Definitions.

For purposes of this part, the term—

*Appointment* means provision of counsel in a manner that is reasonably timely in light of the time limitations for seeking State and Federal postconviction review and the time required for developing and presenting claims in the postconviction proceedings.

*Appropriate State official* means the State attorney general, except that, in a State in which the State attorney general does not have responsibility for Federal habeas corpus litigation, it means the chief executive of the State.

*Indigent prisoners* means persons whose net financial resources and income are insufficient to obtain qualified counsel.

*State postconviction proceedings* means collateral proceedings in State court, regardless of whether the State conducts such proceedings after or concurrently with direct State review.

### § 26.22 Requirements.

The Attorney General will certify that a State meets the requirements for certification under 28 U.S.C. 2261 and 2265 if the Attorney General determines that the State has established a mechanism for the appointment of counsel for indigent prisoners under sentence of death in State postconviction proceedings that satisfies the following standards:

(a) As provided in 28 U.S.C. 2261(c) and (d), the mechanism must offer to all such prisoners postconviction counsel, who may not be counsel who previously represented the prisoner at trial unless the prisoner and counsel expressly requested continued representation, and the mechanism must provide for the entry of an order by a court of record—

(1) Appointing one or more attorneys as counsel to represent the prisoner upon a finding that the prisoner is indigent and accepted the offer or is unable competently to decide whether to accept or reject the offer;

(2) Finding, after a hearing if necessary, that the prisoner rejected the offer of counsel and made the decision with an understanding of its legal consequences; or

(3) Denying the appointment of counsel, upon a finding that the prisoner is not indigent.

(b) The mechanism must provide for appointment of competent counsel as defined in State standards of competency for such appointments.

(1) A State's standards of competency are presumptively adequate if they meet or exceed either of the following criteria:

(i) Appointment of counsel who have been admitted to the bar for at least five years and have at least three years of postconviction litigation experience. But a court, for good cause, may appoint other counsel whose background, knowledge, or experience would otherwise enable them to properly represent the petitioner, with due consideration of the seriousness of the penalty and the unique and complex nature of the litigation; or

(ii) Appointment of counsel meeting qualification standards established in conformity with 42 U.S.C. 14163(e)(1) and (2)(A), if the requirements of 42 U.S.C. 14163(e)(2)(B), (D), and (E) are also satisfied.

(2) Competency standards not satisfying the benchmark criteria in paragraph (b)(1) of this section will be deemed adequate only if they otherwise reasonably assure a level of proficiency appropriate for State postconviction litigation in capital cases.

(c) The mechanism must provide for compensation of appointed counsel.

(1) A State's provision for compensation is presumptively adequate if the authorized compensation is comparable to or exceeds—

(i) The compensation of counsel appointed pursuant to 18 U.S.C. 3599 in Federal habeas corpus proceedings reviewing capital cases from the State;

(ii) The compensation of retained counsel in State postconviction proceedings in capital cases who meet State standards of competency sufficient under paragraph (b);

(iii) The compensation of appointed counsel in State appellate or trial proceedings in capital cases; or

(iv) The compensation of attorneys representing the State in State postconviction proceedings in capital cases, subject to adjustment for private counsel to take account of overhead costs not otherwise payable as reasonable litigation expenses.

(2) Provisions for compensation not satisfying the benchmark criteria in paragraph (c)(1) of this section will be deemed adequate only if the State mechanism is otherwise reasonably designed to ensure the availability for appointment of counsel who meet State standards of competency sufficient under paragraph (b) of this section.

(d) The mechanism must provide for payment of reasonable litigation expenses of appointed counsel. Such expenses may include, but are not limited to, payment for investigators, mitigation specialists, mental health and forensic science experts, and support personnel. Provision for reasonable litigation expenses may incorporate presumptive limits on payment only if means are authorized for payment of necessary expenses above such limits.

**§ 26.23  Certification process.**

(a) An appropriate State official may request in writing that the Attorney General determine whether the State meets the requirements for certification under § 26.22 of this subpart.

(b) Upon receipt of a State's request for certification, the Attorney General will make the request publicly available on the Internet (including any supporting materials included in the request) and publish a notice in the FEDERAL REGISTER—

(1) Indicating that the State has requested certification;

(2) Identifying the Internet address at which the public may view the State's request for certification; and

(3) Soliciting public comment on the request.

(c) The State's request will be reviewed by the Attorney General. The review will include consideration of timely public comments received in response to the FEDERAL REGISTER notice under paragraph (b) of this section, or any subsequent notice the Attorney General may publish providing a further opportunity for comment. The certification will be published in the FEDERAL REGISTER if certification is granted. The certification will include a determination of the date the capital counsel mechanism qualifying the State for certification was established.

(d) A certification by the Attorney General reflects the Attorney General's determination that the State capital counsel mechanism reviewed under paragraph (c) of this section satisfies chapter 154's requirements. A State may request a new certification by the Attorney General to ensure the continued applicability of chapter 154 to cases in which State postconviction proceedings occur after a change or alleged change in the State's certified capital counsel mechanism. Changes in a State's capital counsel mechanism do not affect the applicability of chapter 154 in any case in which a mechanism certified by the Attorney General existed throughout State postconviction proceedings in the case.

(e) A certification remains effective for a period of five years after the completion of the certification process by the Attorney General and any related judicial review. If a State requests recertification at or before the end of that five-year period, the certification remains effective for an additional period extending until the completion of the re-certification process by the Attorney General and any related judicial review.

# PART 27—WHISTLEBLOWER PROTECTION FOR FEDERAL BUREAU OF INVESTIGATION EMPLOYEES

### Subpart A—Protected Disclosures of Information

Sec.
27.1  Making a protected disclosure.

## CERTIFICATE OF SERVICE

I hereby certify that on this 29th day of April 2015 I caused the foregoing excerpts of record to be electronically filed with the United States Court of Appeals for the Ninth Circuit, and served to counsel, via ECF system.

s/Kent S. Scheidegger